FILED

2017 JUL 10 PM 12: 53

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELCHI RAYMOND,                        )
                                       )  Civil Action
        Plaintiff,                     )  No._____
                                       )
                                       )  2:17-cv-383-FtM-99MRM
    v.                                 )
                                       )
THE SHOWROOM CORP., CONSUMER           )
PORTFOLIO SERVICES, INC., ALS          )
RESOLVION, LLC, and ABS RECOVERY       )
INCORPORATED,                          )
                                       )
        Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Melchi Raymond, alleges violation of the Motor Vehicle Information and Cost Savings Act 49 U.S.C. § 32701 *et seq.* ("MVICSA"), the Florida Deceptive and Unfair Trade Practices Act § 501.201 *et seq.* ("FDUTPA"), and breach of warranty of title against The Showroom Corp. ("Showroom"). Plaintiff further alleges violations of the FDUTPA and conversion against Consumer Portfolio Services, Inc. ("CPS"), ALS Resolvion, LLC ("ALS"), and ABS Recovery Incorporated ("ABS").

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the MVICSA, a federal statute.

2. The Court has supplemental jurisdiction over the state law claims because the basis of the MVICSA claim involves the same conduct that supports the state law claims.

3. The Court has personal jurisdiction under 28 U.S.C. §1391(b)(2) because the acts causing Plaintiff's claims occurred in Jacksonville, Florida, and the Defendants conduct business in Ft. Meyers, Florida.

## PARTIES

4. Plaintiff is a natural person who resides in Ft. Myers, Florida.

5. The Showroom is a Florida for-profit corporation with its principal place of business at 850 NW 42 Ave., Miami, FL 33126.

6. ABS is a Florida for-profit corporation with its principal place of business at 5886 Enterprise PKY, Ft. Myers, FL 33905.

7. ALS is a foreign limited liability company with its principal place of business at 1150 Lake Hearn Dr., Suite 640, Atlanta, GA 30342.

8. CPS is a foreign for-profit corporation with its principal place of business at 3800 Howard Hughes Pkwy, Suite 1400, Las Vegas, NV 89169.

## FACTUAL ALLEGATIONS

### Plaintiff buys a used car from the Showroom

9. On October 15, 2016, Plaintiff visited the Showroom dealership looking to buy a used car.

10. Plaintiff found a used 2012 Volkswagen Passat (VIN: 1VWAH7A30CC03300) ("Vehicle") that he liked.

11. The Showroom's salesman told Plaintiff the Vehicle had clear title and Showroom would transfer it over in the Plaintiff's name. Based on these representations, Plaintiff bought the Vehicle for a total purchase price of $7,494.19. The Buyer's Order is attached as Exhibit "A."

12. Plaintiff paid $5,000 in cash and $2,494.19 with his debit card to purchase the Vehicle from the Showroom.

2

13. Included in the purchase price was a $200 fee for transferring the tag and title over to Plaintiff's name. However, the Showroom never performed that transaction.

14. Although the Showroom applied for and obtained temporary registration for the Vehicle, the Showroom never presented the title to Plaintiff, nor did the Showroom sign title over to Plaintiff on the day he purchased the Vehicle.

15. Further, the Showroom has never signed or attempted to sign title over to Plaintiff.

16. Unknown to Plaintiff, the Vehicle had a previous lienholder that the Showroom failed to pay after it sold the Vehicle to Plaintiff. The Showroom never disclosed these issues to Plaintiff.

17. Upon information and belief, CPS entrusted the Showroom with possession of the Vehicle to sell on its dealership lot.

18. Had Plaintiff known about the issues with the Vehicle's title, he would not have purchased the Vehicle from the Showroom.

19. Plaintiff has attempted to obtain the Vehicle's permanent registration and title from the Showroom.

20. However, every time Plaintiff tried to get permanent registration and title to the Vehicle, the Showroom told him that the Florida Department of Motor Vehicle website was having issues and it couldn't get the permanent registration or the title.

21. Instead, the Showroom has repeatedly given temporary registration tags every month since Plaintiff purchased the Vehicle.

22. The Showroom knew the Vehicle had a previous lienholder, which it failed to pay-off, but concealed this material fact from Plaintiff. Further, the Showroom acted with the

intent to defraud during the sale of the Vehicle to Plaintiff, including through the filing of this Complaint, all in an effort to give itself a financial windfall.

### Showroom's violation of the MVICSA

23. The Showroom violated the MVICSA by not showing Plaintiff the Vehicle's title on the day he purchased it and by not signing and delivering the proper title document to Plaintiff for him to sign. The Showroom violated federal law that required it to create a permanent public record on a secure document that discloses the odometer reading at the time of the Vehicle's sale.

24. The requirement for creating a permanent public record by recording the title ensures that a purchaser has the opportunity to view the information about the prior owner or owners and also places the odometer reading at the time of each sale in the official chain of title.

25. By not creating the odometer disclosure on the proper title document, the Showroom not only denied Plaintiff access to the information shown on that document, it also denied any future purchasers access to the information about the odometer reading and condition of the Vehicle.

26. The Showroom's odometer disclosure practice means that it falsified the record chain of permanent disclosures of odometer readings for the Vehicle.

### CPS, ALS, and ABS, repossessed the Vehicle

27. On or about June 25, 2017, Plaintiff discovered that the Vehicle was taken from his possession.

28. Plaintiff learned that ALS, on behalf of CPS, hired ABS to repossess the Vehicle.

29. Plaintiff immediately called ABS and explained that he bought the Vehicle from the Showroom months prior and he was the rightful owner. ABS didn't care and refused to give possession of the Vehicle back to Plaintiff unless he paid $275.

30. However, Plaintiff did not have $275 to pay to ABS.

31. Plaintiff also contacted CPS and ALS to try and get the situation resolved, but both companies have ignored him and refused to give possession of the Vehicle back.

32. Plaintiff felt unprotected, violated, vulnerable, and utterly exposed to ABS, ALS, and CPS's illegal conduct.

33. CPS, ALS, and ABS did not have any right to repossess the Vehicle; yet, they acted in concert and repossessed the Vehicle from Plaintiff anyway.

34. Plaintiff was left feeling helpless because he had no vehicle and didn't know what to do.

35. To date, Plaintiff is still being deprived of his possession and use of the Vehicle.

**COUNT I AS TO ABS'S VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT § 501.204**

36. ABS engaged in "trade or commerce" as defined by § 501.203(8) when it repossessed the Vehicle from Plaintiff and demanded money to get it back.

37. ABS engaged in deceptive and unfair conduct when it repossessed the Vehicle when it had no legal right to do so because Plaintiff was the rightful owner; yet, it still repossessed.

38. ABS further engaged in deceptive and unfair conduct when ABS refused to return possession of the Vehicle despite knowing that Plaintiff was the rightful owner.

39. ABS willfully and intentionally violated the FDUTPA because it knew it had no legal right to keep possession of the Vehicle, but refused to return it anyway.

5

40. ABS's illegal conduct caused Plaintiff substantial financial harm because he lost the use of his vehicle.

41. Because of ABS's violation of the FDUTPA, Plaintiff is entitled to damages as set forth under FDUTPA.

### COUNT II AS TO ABS'S WILLFULL AND INTENTIONAL CONVERSION OF THE VEHICLE

42. Plaintiff was—and is—the rightful owner of the Vehicle. As such, ABS never had a legal right to take possession of the Vehicle from Plaintiff.

43. Plaintiff never gave consent to ABS to interfere with his right to possession and use of the Vehicle.

44. ABS intended to deprive, and deprived, Plaintiff of his possession and use of the Vehicle when it repossessed the Vehicle and refused to give it back to Plaintiff.

45. ABS also acted in an arrogant disregard of Plaintiff's rights when it willfully and intentionally kept possession of the Vehicle.

46. Because of ABS's conversion of the Vehicle, Plaintiff is entitled to damages of the fair market value of the Vehicle when converted, loss of use of the Vehicle, and monetary damages.

### COUNT III AS TO ALS'S VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT § 501.204

47. ALS engaged in "trade or commerce" as defined by § 501.203(8) when it caused the Vehicle to be repossessed from Plaintiff.

48. ALS engaged in deceptive and unfair conduct when it hired ABS to repossess the Vehicle when it had no legal right to do so because Plaintiff was the rightful owner.

6

49. ALS acted in concert with CPS and ABS to illegally repossess the Vehicle from Plaintiff.

50. ALS further engaged in deceptive and unfair conduct when ALS refused to return possession of the Vehicle back to Plaintiff after knowing he was the rightful owner.

51. ALS willfully and intentionally violated the FDUTPA because it knew it had no legal right to keep possession of the Vehicle, but refused to return it anyway.

52. ALS's illegal conduct caused Plaintiff substantial financial harm because he lost the use of his vehicle.

53. Because of ABS's violation of the FDUTPA, Plaintiff is entitled to damages as set forth under FDUTPA.

### COUNT IV AS TO ALS'S WILLFULL AND INTENTIONAL CONVERSION OF THE VEHICLE

54. Plaintiff was the rightful owner of the Vehicle. As such, ALS never had a legal right to take possession of the Vehicle from Plaintiff.

55. Plaintiff never gave consent to ALS to interfere with his right to possession and use of the Vehicle.

56. ALS intended to deprive, and deprived, Plaintiff of his possession and use of the Vehicle when it hired ABS to repossess the Vehicle and refused to give it back to Plaintiff.

57. ALS also acted in an arrogant disregard of Plaintiff's rights when it willfully and intentionally kept possession of the Vehicle.

58. Because of ALS's conversion of the Vehicle, Plaintiff is entitled to damages of the fair market value of the Vehicle when converted, loss of use of the Vehicle, and monetary loss damages.

### COUNT V AS TO CPS'S VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT § 501.204

59. CPS engaged in "trade or commerce" as defined by § 501.203(8) when it caused the Vehicle to be repossessed from Plaintiff.

60. CPS engaged in deceptive and unfair conduct when it hired ABS to repossess the Vehicle when it had no legal right to do so because Plaintiff was the rightful owner.

61. CPS acted in concert with ALS and ABS to illegally repossess the Vehicle from Plaintiff.

62. CPS further engaged in deceptive and unfair conduct when it refused to return possession of the Vehicle back to Plaintiff after knowing he was the rightful owner.

63. CPS willfully and intentionally violated the FDUTPA because it knew it had no legal right to keep possession of the Vehicle, but refused to return it anyway.

64. CPS's illegal conduct caused Plaintiff substantial financial harm because he lost the use of his vehicle.

65. Because of CPS's violation of the FDUTPA, Plaintiff is entitled to damages as set forth under FDUTPA.

### COUNT VI AS TO CPS'S WILLFULL AND INTENTIONAL CONVERSION OF THE VEHICLE

66. Plaintiff was the rightful owner of the Vehicle. As such, CPS never had a legal right to take possession of the Vehicle from Plaintiff.

67. Plaintiff never gave consent to CPS to interfere with his right to possession and use of the Vehicle.

68. CPS intended to deprive, and deprived, Plaintiff of his possession and use of the Vehicle when it hired CPS to repossess the Vehicle and refused to give it back to Plaintiff.

69. CPS also acted in an arrogant disregard of Plaintiff's rights when it willfully and intentionally kept possession of the Vehicle.

70. Because of CPS's conversion of the Vehicle, Plaintiff is entitled to damages of the fair market value of the Vehicle when converted, loss of use of the Vehicle, and monetary loss damages.

### COUNT VII AS TO SHOWROOM'S VIOLATION OF THE MOTOR VEHICLE INFORMATION AND COST SAVINGS ACT §§ 32703(2), 32705(a)(2)

71. Plaintiff is a person as defined under the MVICSA.

72. The Showroom transferred ownership of the Vehicle upon selling it to Plaintiff.

73. The Showroom violated the MVICSA, when it made false statements to Plaintiff, with the intent to defraud Plaintiff, in transferring ownership of the Vehicle. 49 U.S.C. § 32705(a)(2) ("A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation.")

74. The Showroom was required to create an odometer disclosure on the official title document for the sale of the Vehicle to Ms. Manning.

75. The Showroom violated the placement requirement of the MVICSA because it did not give Plaintiff the disclosure of the odometer mileage for the Vehicle.

76. To date, the Showroom has never signed title of the Vehicle to Plaintiff.

77. The Showroom acted with intent to defraud Plaintiff and all subsequent purchasers.

78. Because of the Showroom's violations of the MVICSA, Plaintiff is entitled to damages of 3 times his actual damages or $10,000, whichever is greater, and attorney's fees and costs.

## COUNT VIII AS TO SHOWROOM'S BREACH OF WARRANTY OF TITLE

79. The Showroom is a "seller" as defined under the UCC.

80. Under the UCC, "there is in a contract for sale a warranty by the seller that: (a) The title conveyed shall be good, and its transfer rightful; and (b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge." Fla. Stat. §§ 672.312(1)(a)-(b).

81. The Showroom breached that warranty of title as evidenced by the repossession of the Vehicle because of previous lien holders.

82. Plaintiff did not know of any lien or encumbrance on the Vehicle's title when he bought the Vehicle.

83. Plaintiff notified the Showroom of the title problems on numerous occasions, but the Showroom ignored him.

84. Plaintiff is entitled to damages under the UCC for the Showroom's breach of warranty of title on the Vehicle.

## COUNT IX AS TO THE SHOWROOM'S VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT § 501.204

85. The Showroom lied to Plaintiff about the Vehicle having clear title and its previous lien holders. This conduct caused Plaintiff financial harm because the Vehicle was worth less than what he paid for it.

86. The Showroom engaged in "trade or commerce" as defined by § 501.203(8) when it sold the Vehicle to Plaintiff.

87. The Showroom engaged in unfair and deceptive conduct when it refused to sign title over to Plaintiff and provide him permanent registration.

88. The Showroom also engaged in unfair and deceptive conduct when it charged Plaintiff $200 to transfer the title and registration over to Plaintiff; yet, it never performed that transaction.

89. The Showroom's violation of the MVICSA and breach of warranty of title is a *per se* violation of the FDUTPA. Fla. Stat. § 501.203(3)(a).

90. Because of CPS's violation of the FDUTPA, Plaintiff is entitled to actual damages and attorney's fees and costs as set forth under FDUTPA.

### JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

91. Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

92. Plaintiff reserves the right to amend his Complaint and add a claim for punitive damages.

### RELIEF REQUESTED

WHEREFORE. Plaintiff respectfully requests this Court to enter judgment against Defendants for the following:

a. That Plaintiff be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b. That Plaintiff be awarded statutory damages;

c. That Plaintiff be awarded costs and attorney's fees;

d. That Plaintiff be awarded declaratory and injunctive relief;

e. That the Court enter an order that Defendants and their agents, or anyone acting on their behalf, are immediately restrained from altering, deleting or destroying any documents or records relating to Plaintiff and this Complaint; and

f.	Such other and further relief as the Court may deem just and proper.

g.	Plaintiff demands for a jury trial on all issues.

Dated: July 6, 2017                             Respectfully submitted,

/s/ Darren R. Newhart
Darren R. Newhart, Esq.
Florida Bar No.: 0115546
E-mail: darren@cloorg.com
/s/ J. Dennis Card Jr.
J. Dennis Card, Jr.
Florida Bar No.: 0487473
E-mail: DCard@Consumerlaworg.com
Consumer Law Organization, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 822-3446
Facsimile: (305) 574-0132